Hansel L. McGEE, Robert A. Mack, Kenneth W. Drummond, Wilbert T. Lawton, and Aida N. Rodriguez, Plaintiffs,

v.

BOARD OF ELECTIONS OF the CITY OF NEW YORK and the State of New York, Defendants,

and

Jeffrey R. Korman and Lee J. Holzman Defendant-Intervenors.

No. 87 Civ. 5608 (EW).

United States District Court, S.D. New York.

Aug. 13, 1987.

---

**610**

Kellner, Chehebar & Deveney, New York City, for plaintiffs; Douglas A. Kellner, John Patrick Deveney, of counsel.

Peter L. Zimroth, Corp. Counsel for the City of New York, New York City, for defendant Bd. of Elections of the City of New York; Anne Carson, of counsel.

Robert J. Abrams, Atty. Gen. of the State of N.Y., New York City, for defendant State of N.Y.; Tarquin Jay Bromley, of counsel.

Dubliner, Haydon, Straci & Victor, New York City, for defendant-intervenors; Paul A. Victor, of counsel.

EDWARD WEINFELD, District Judge.

This action was instituted by plaintiff Hansel L. McGee ("McGee"), and several others, seeking an order directing that the Board of Elections of the City of New York place McGee's name on the ballot in the Democratic party primary election to be held on September 15, for the position of Surrogate in the Bronx. That position became vacant on July 2, 1987,[1] when the New York State Court of Appeals removed former Surrogate Bertram Gelfand from office. Under the New York State Constitution, the vacancy created thereby is to be filled at the next general election.[2]

Under New York election law, primaries are held for such vacancies unless the vacancy occurs less than a week before the last day for circulating designating petitions.[3] In that situation, for county wide offices, a party's nominee is chosen after the primary by "a majority vote of a quorum of the members of a county committee or committees elected in the political subdivision in which such vacancy is to be filled, or by a majority of such other committee as the rules of the party may provide."[4] In this action, plaintiff McGee complains that the provision of the New York State law requiring that candidates for borough wide office in any of the five boroughs of New York City file 5,000 valid signatures to be placed on the ballot[5] is unconstitutional when the time to obtain those signatures is "significantly reduced" from the usual period, which is thirty-seven days. Under New York law, valid designating signatures may be collected by candidates for a primary election not more than fourteen weeks before the primary election[6] and no later than "the ninth Thursday preceding the primary election," when petitions must be filed for verification.[7] In this case the period allowed for the collec-

1. During oral argument on this motion, there was a dispute as to the exact day on which the action by the Court of Appeals became effective. Thus, parties do not agree as to whether or not there were fifteen or fourteen days for the collection of designating signatures. All parties, however, agreed that the difference occasioned by this dispute is immaterial to the question raised by the plaintiffs.

2. N.Y. Const. art. VI, § 21(a) states:
When a vacancy shall occur, otherwise than by expiration of term, in the office of justice of the supreme court, of judge of the county court, of judge of the surrogate's court or judge of the family court outside the City of New York, it shall be filled for a full term at the next general election held not less than three months after such vacancy occurs and, until the vacancy shall be so filled, the gover-nor by and with the advice and consent of the senate, if the senate shall be in session or, if the senate shall not be in session, the governor may fill such a vacancy by an appointment which shall continue until and including the last day of December next after the election at which the vacancy shall be filled.

3. N.Y.Elec.Law § 6–116.

4. N.Y.Elec.Law § 6–116.

5. N.Y.Elec.Law § 6–136(2)(b).

6. N.Y.Elec.Law § 6–134(6) allows that designating petitions may not be validly signed more than twelve weeks before a primary election.

7. N.Y.Elec.Law § 6–158(1).

tion of signatures began with the effective date of the vacancy in the position, leaving a period of fifteen days until the required date of filing of petitions.

McGee did in fact file petitions containing 11,688 signatures; however, the Board of Elections initially found that only 4,568 were valid, 414 short of the 5,000 valid signatures required by law to place a candidate on the ballot in a primary. Two other candidates filed petitions which the Board of Elections initially found to contain more than the requisite 5,000 valid signatures.[8] Plaintiff McGee seeks a preliminary injunction prohibiting the Board of Elections from distributing any ballots at the primary election unless his name is indicated as a candidate for the position of Bronx Surrogate. The defendants, the Board of Elections of the City of New York and the State of New York, and defendants-intervenors move for dismissal of this action. In the alternative, defendants the Board of Elections and the State of New York ask that this Court abstain from deciding the issue of the preliminary injunction because there are, currently, two consolidated actions pending with regard to plaintiff McGee and others seeking the nomination before a New York State court. In one action, Lee J. Holzman, a candidate for the nomination, and Jeffrey Korman, the objector to the McGee petitions, both of whom are defendant intervenors in the action before this Court, seek an order invalidating McGee's disputed petitions. Holzman and Korman charge that, for various reasons, McGee does not have even the 4568 valid signatures that the Board of Elections found were valid but insufficient to place him on the ballot. In that action, McGee appears alleging that Holzman's petitions, due to various errors, lack the necessary number of valid signatures. McGee also has filed a separate action in New York State Court seeking a declaration of the validity of his designating petitions and to have his name placed on the ballot in Democratic Party primary election to be held in September. The New York State Court of Appeals has set aside two days at the end of this month, August 25 and 26, to hear appeals from elections actions such as the two previously begun in New York State court by Korman and Holzman and McGee.

█ The essence of McGee's claim in this action is that the combination of the signature requirement and the fifteen day time limit is an arbitrary, and therefore unconstitutional, burden on the first amendment right to associate, as applied to the States through the fourteenth amendment. Plaintiff McGee also seems to allege that he, and presumably all potential candidates for the Democratic nomination for the Bronx Surrogate seat, has been denied the equal protection of the law because candidates seeking other positions had a longer period of time to collect designating signatures. Based upon the principles of federalism and comity, this Court abstains from deciding any federal issues presented until the New York State Courts have been given the opportunity to decide the issues before them. The doctrine of abstention is "aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system."[9] Here this Court is presented with a case that clearly falls within that doctrine and its purposes.

In *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, the Supreme Court stated that federal courts should not enjoin pending state administrative proceedings when important state interests are at issue, if the plaintiff retains the opportunity to fully and fairly litigate constitutional claims during or after the state proceed-

---

8. In its initial review of the petitions, the Board of Elections found that Lee J. Holzman filed petitions containing 8,116 valid signatures out of 12,330 claimed signatures, Exhibit A to the Affidavit of Tarquin Jay Bromley, while Lorraine Bachell filed petitions containing 5,158 valid signatures out of 12,127 claimed signatures. Affidavit of Tarquin Jay Bromley, para.

4. Both of these candidates are presently involved in New York State court cases that seek to validate or invalidate the petitions.

9. *See Harrison v. N.A.A.C.P.*, 360 U.S. 167, 177–78, 79 S.Ct. 1025, 1030–31, 3 L.Ed.2d 1152 (1959).

ings.[10] The Court of Appeals for the Second Circuit explained that in applying *Dayton Christian Schools*, three issues must be resolved: "(1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding."[11] The plaintiffs' request that this Court enter a preliminary injunction placing plaintiff McGee's name on the ballot, no matter the actual number of valid signatures obtained by McGee on his designating petitions, would effectively end the pending proceedings in New York State court. Upon argument of this motion, in response to this Court's inquiry as to the relief sought by plaintiff McGee from this Court, plaintiff's counsel argued that given the fifteen day period from July 2 to midnight July 16, when contrasted to the usual thirty-seven day period (where there is no vacancy caused by removal from office), this Court should hold that his approximately forty five hundred valid signatures, as determined by the Board of Elections, are sufficient and that this Court direct his name be placed on the ballot. Counsel for a non-party candidate urged that this Court determine the necessary number of signatures for this period by using a formula derived by dividing the usual number of days for collecting designating signatures (37) into the actual number of days a candidate had to gather signatures and multiplying that ratio by the normal required number of signatures. Counsel also suggested that the non-party candidate be placed on the ballot, as well. Under that formula a candidate would need 2027 valid signatures.[12] To adopt either proposal, this Court in effect would have to invalidate a State law, duly passed by a State Legislature and approved by the Governor, and substitute the Court's own judgment as to the number of valid signatures to be offered within a fixed period of time as evidence that a proposed candidate has a modicum of support among the voting public. Such a decision would be clearly inappropriate for this Court given the vital interest New York State has in protecting the integrity of its election process,[13] and the differing functions exercised by a Court and a Legislature.

The federal constitutional issue, if any exists, may be raised in the State court actions[14] and, if the constitutional issue there presented is not fully and fairly heard, this Court may determine the issue after final disposition of these State actions by the New York State Court of Appeals. Abstention is also warranted in this instance based on the Supreme Court decision in *Railroad Commission of Texas v. Pullman Co.*,[15] and its progeny. In *Pullman Co.*, the Supreme Court stated that federal courts should abstain from decision in cases where a pending state court determination would effectively moot the constitutional issue. With respect to such federal issues as may inhere in this action, decisions by the State courts now reviewing the petition gathering process may result in a determination that would render unnecessary a ruling by this Court as to the constitutionality of the New York law as applied.[16] In pending State court proceedings, other candidates are alleging that plaintiff McGee has less than the 4,568 valid signatures found by the Board of

---

10. 477 U.S. 619, ——, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986).

11. *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.1987).

12. Number of valid signatures = (15/37) × 5000
$$= 0.4054054 \times 5000$$
$$= 2027.027$$

13. This State interest has been recognized in numerous Supreme Court cases. *See, e.g. American Party of Texas v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1973).

14. N.Y.Elec.Law § 16-100(1) states:

"The supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any subject set forth in this article, which shall be construed liberally."

15. 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1940).

16. Under New York Election Law 16-101, the New York State Courts may review the statute to determine its federal constitutionality.

Elections to be insufficient to place him on the ballot. Another cogent reason for the Court to abstain in this case is that the pending State court cases will serve to refine and elucidate the facts at issue so that, if this Court must eventually reach the merits of the constitutional claim, a full record will be available. At present there has not been a final determination even as to the question of how many candidates have indeed filed petitions with valid signatures satisfying the statutory requisite. Clearly issues such as this will be of prime importance in any determination of the validity of the signature requirements in this action.[17]

The motion for a preliminary injunction is denied.

So ordered.

---

**17.** In *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1973), the Supreme Court made clear that the determination of the constitutionality of statutory signature requirements applied to independent candidates entailed a finding as to the burden placed on the independent candidates by those requirements. *Id.* at 739–40, 94 S.Ct. at 1283–84.